HONORABLE JUDGE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ALISHA CARRIGAN and BREE LUARK, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WAYFAIR, LLC and WAYFAIR, INC.,<br><br>Defendants. | Case No.: 2:26-cv-02435-JLR<br><br>CONSOLIDATED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Alisha Carrigan and Bree Luark ("Plaintiffs"), on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complains of Wayfair LLC and Wayfair Inc. ("Defendants") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

19.190.020(1)(b).

3. Despite the enactment of CEMA and the Washington Legislature's clear intention to prohibit spam emails, including those with false or misleading information in the email's subject line, Defendants Wayfair, LLC and Wayfair Inc. ("Defendants") continue to send emails expressly prohibited by the Act.

4. Defendants spam Washington consumers, including Plaintiffs, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendants' marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. In reality, those sales and opportunities are extended or repeated. Thus, consumers, like Plaintiffs, are induced to act quickly and under a false sense of pressure.

7. Through this deceptive time-sensitivity, Defendants falsely narrow the field—steering consumers away from shopping for better deals—to their own products that must be purchased *now*.

8. Plaintiffs challenge Defendants' harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

9. By removing this action, Defendants assert that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d).



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

10. This Court has personal jurisdiction over Defendants under RCW 4.28.185. Defendants transact business in Washington. The claims giving rise to this action arise from Defendants' transaction of business in this state and Defendants' purposeful transmission of electronic mail messages to Washington residents. This Court also has personal jurisdiction over Defendants under RCW 19.86.160 because Defendants engaged in conduct in violation of the CPA that had an impact in Washington. Finally, Plaintiffs received emails from Defendants while in Washington.

11. Venue is proper under 28 U.S.C. §§ 1391(b)(2) and (c)(2) because a substantial part of the events giving rise to the claims occurred in this District. Defendants sent electronic mail messages at issue in this action to residents of this District, including at least one Plaintiff.

## III. PARTIES

12. Plaintiff Alisha Carrigan is a resident of Snohomish County, Washington. She has received Defendant's deceptive emails while residing and present in Washington.

13. Plaintiff Bree Luark is a resident of Skagit County, Washington. She has received Defendant's deceptive emails while residing and present in Washington.

14. Defendant Wayfair LLC is incorporated in Massachusetts with its principal place of business in Boston, Massachusetts.

15. Defendant Wayfair Inc. is a Delaware corporation and has its principal place of business in Boston, Massachusetts.

16. Plaintiffs presently understand that one or both Wayfair Defendants participated in the transmission and commercial promotions described below. The precise allocation of responsibility between the affiliated entities is information principally within Defendants' possession.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

17. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

18. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

19. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

20. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

21. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

22. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

23. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

24. Consumers therefore routinely "consent" to receive flurries of commercial emails



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

which they did not meaningfully request and in which they have no genuine interest.

25. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

26. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

27. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

28. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

29. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

30. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

31. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

32. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

33. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Defendants' marketing emails make false time scarcity claims.**

34. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

35. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 33, at 22.

36. "False or misleading scarcity claims can change the behavior of consumers." *Online Choice Architecture*, *supra* para. 33, at 27.

37. Representations about the timing and duration of sales, discounts, and other special



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

38. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 33, at 26.

39. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

40. Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

41. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

42. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

43. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

44. These false time scarcity claims are a staple of Defendants' marketing scheme to compel consumers to purchase Wayfair products.

45. Wayfair is a furniture and home goods e-commerce brand. Defendants sell Wayfair


**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

products directly through the website, www.wayfair.com, as well as through retail storefronts located throughout the United States.

46. To advertise products and encourage purchases, Defendants routinely send spam emails to consumers, including consumers in Washington. These emails are part of a calculated marketing strategy that Defendants orchestrate in advance to maximize sales by distorting factual information about the duration and availability of Wayfair promotions.

47. Unfortunately for those recipients, Defendants regularly title their emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

48. Defendants have tailored their approach to fit a number of offers, including promotion extensions. In these examples, Defendants send consumers marketing emails to advertise an offer, promotion, or sale. Then, Defendants use the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase Wayfair products. Finally, once the originally advertised "deadline" has passed, Defendants knowingly extend the same promotion to a new end date.

49. This misleading marketing strategy allows Defendants to maximize sales during both the initial promotion, as well as the subsequent extension. While Defendants may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions—which are only disclosed once the original promotion has ended—Defendants compel consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions. An apt example of Wayfair's marketing scheme occurred in late 2023.

50. On November 24, 2023, Defendants sent consumers a mass email with the subject



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

line, "⏰ BLACK FRIDAY ⏰ UP TO 80% OFF ⏳ FINAL HOURS[.]" The body of the email contained links that consumers could use to access the time-limited pricing.

51. However, the subject line of the November 24, 2023, email was false or misleading because the Black Friday sale was extended, as Defendants knew and intended when they or their contractors created the Black Friday marketing campaign.

52. The next day, on November 25, 2023, Defendants informed consumers that the Black Friday promotion did not conclude on November 24 as Defendants had advertised. An email sent on that date was titled: "HEADBOARDS ⏳ BLACK FRIDAY EXTENDED ⏳ [.]"

53. The November 25, 2023, email confirmed the falsity of the November 24, 2023, subject line.

54. The following month brought another example of Defendants' deceptive marketing scheme.

55. On December 3, 2023, Wayfair sent consumers a mass email with the subject line, "🚩 🚩 CYBER WEEK 🚩 MINUTES LEFT 🚩 [.]" The body of the email confirmed that the sale offered up to 70% off while a large graphic announced that Cyber Week was in its "FINAL HOURS."

56. Defendants simply use the subject lines of such emails to assert false time pressure on recipients. Email titles such as the one Defendants transmitted on December 3 urge consumers to purchase from the Wayfair website by warning them that the offer is coming to an end. The subject line of the December 3, 2023, email was false or misleading because Wayfair offered the same discount the next day.

57. On December 4, 2023, Defendants sent consumers a mass email with the subject line, "DINING TABLE SETS 🚩 UP TO 70% OFF 🚩 🚩 THE BIG HOLIDAY SALE 🚩 [.]"



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Again, offering the same discount previously represented as ending the day before.

58. Deception is a recurring element of Defendants' marketing strategy. In another example of Defendants' scheme, on October 6, 2024, Defendants sent consumers a mass email with the subject line, "🚩 WAY DAY 🚩 ENDS TOMORROW 🚩 [.]"

59. The next day, on October 7, 2024, Wayfair sent consumers two mass emails with the subject lines, "❌ ❌ WAY DAY ❌ FINAL HOURS ❌ ❌" and "❌ WAY DAY ❌ FINAL HOURS ❌ [.]"

60. The subject lines of the October 6 and October 7, 2024, emails were false or misleading as "Way Day" did not end on October 7, but instead was extended, as Defendants knew and intended when they or their contractors created the Way Day marketing campaign.

61. Instead of providing consumers with accurate terms, Defendants chose to keep them in the dark regarding the sale's end date, opting to orchestrate a scheme to promulgate false information.

62. The next day, on October 8, 2024, Defendants informed consumers, "📅 ⏰ 📣 SURPRISE! WAY DAY is officially EXTENDED. 📣 ⏰ 📅 [.]"

63. Thus, the false deadline for the Way Day promotion is simply one example and one element of Defendants' cohesive marketing strategy meant to compel consumers to purchase their merchandise.

64. A Black Friday promotion beginning the following month provides another example of Defendants' marketing scheme

65. On November 30, 2024, Defendants sent consumers a mass email warning them of the impending end of the Black Friday event with the subject line, "🚩 ⏱ Last-chance *BLACK FRIDAY* deals," with email contents indicating the sale was up to 80% off and set to end.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

66. The subject line of the November 30, 2024, email was false or misleading as November 30 was not consumers' "last chance" to participate in the Black Friday Sale. Instead, the promotion was extended, as Defendants knew and intended when they or their contractors created the marketing campaign.

67. The next day, on December 1, 2024, Defendants transmitted an email titled, "⬛⬛⬛⬛ BLACK FRIDAY EXTENDED ⬛⬛⬛⬛[,]" confirming that November 30 was not the "last chance" for the Black Friday sale despite the representation made in the November 30, 2024, subject line.

68. In another example of Defendants' marketing scheme, they sent misleading subject lines concerning a President's Day clearance event in February 2025.

69. On February 17, 2025, Defendants transmitted a mass email with the subject line, "🔴 CLEARANCE ⚪ ENDS TONIGHT 🔵," with the email contents indicating the sale was up to 70% off and set to end.

70. However, to the detriment of consumers, the subject line of the February 17, 2025, email was false or misleading as the clearance sale did not end that night, but instead was extended, as Defendants knew and intended when they or their contractors created the marketing campaign.

71. The next day, on February 18, 2025, Defendants informed consumers, "📣📣 CLEARANCE is EXTENDED 🥳🙌[.]" So, despite the unambiguous deadline that it communicated to consumers in the subject line of its February 17 email, Defendants continued to offer the same opportunity beyond the alleged end date.

72. By stuffing consumer inboxes with such misinformation, Defendants ensure that email recipients lack the accurate details needed to make educated buying decisions. Additional instances of Defendants' deceptive marketing scheme continued in 2025.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

73. As another example, on April 16, 2025, Defendants sent consumers two mass emails with the subject lines, "⭕ Last day to get UP TO 50% OFF ⭕" and "⏱️ OUTDOOR SALE ⏱️ HOURS LEFT ⏱️ [.]" Inside, both emails advertised a "Big Outdoor Sale" for up 50% off select items.

74. The subject lines of both April 16, 2025, emails were false and misleading. Defendants never intended to conclude the "Big Outdoor Sale" on April 16. The 50% off discount did not end that night, but instead was extended, as Defendants knew and intended when they or their contractors created the marketing campaign.

75. Two days later, on April 18, 2025, Defendants sent consumers an email with the subject line, "⏳ BIG Outdoor Sale EXTENDED (but not for long)[,]" confirming that the promotion continued beyond the deadline which Defendants communicated in their April 16, 2025, subject lines.

76. Before the month could end, Defendants returned to consumers' inboxes with more false and misleading subject lines.

77. On April 28, 2025, Defendants sent consumers two mass emails with the subject lines, "🚩 WAY DAY 2025 is *officially* ENDING 🚩" and "🗓️ ⏳ Spoiler: LAST DAY of WAY DAY ⏳ 🗓️," both with email contents indicating that the sale was up to 80% off and set to end.

78. The subject lines of the April 28, 2025, emails were false or misleading as the "Way Day" sale did not end that night, but instead was extended, as Defendants knew and intended when they or their contractors created the marketing campaign.

79. The next day, on April 29, 2025, Defendants sent an email with the subject heading, "🎉 Surprise 🗓️ 🥳 WAY DAY is *STILL* HERE[,]" confirming that the sale would continue beyond the deadline communicated in the April 28, 2025, subject lines.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

80. The following month, Defendants transmitted false or misleading subject lines while advertising a Memorial Day Clearance event offering up to 70% off items on the Wayfair website.

81. On May 26, 2025, Defendants sent consumers an email with the subject line, "❌ CLEARANCE ❌ FINAL HOURS ❌[.]"

82. Later that evening, Defendants transmitted another marketing email with the subject heading, "⭕ UP TO 70% OFF ⭕ ENDS TONIGHT ⭕[.]"

83. Predictably, however, the May 26, 2025, emails contained false and misleading information in their subject line. Defendants never intended for May 26, 2025, to constitute the "final hours" of the clearance event.

84. On May 27, 2025, Defendants announced that the discount opportunity was still available in an email titled, "🔴 ⚪ 🔵 CLEARANCE IS EXTENDED 🔴 ⚪ 🔵[.]"

85. In an example from later in the year, Defendants transmitted false and misleading subject lines in connection with the Way Day event.

86. On October 29, 2025, Defendants sent an email with the subject line, "RECLINERS 🚩 ❗ WAY DAY ENDS TONIGHT ❗ 🚩[.]" A large graphic within the email emphasized that the opportunity indeed "ENDS TONIGHT."

87. Later that same day, Defendants leveraged additional time pressure against consumers when it transmitted another email warning them of the imminent conclusion of the Way Day sale: "⚠️ This is it... WAY DAY ENDS TONIGHT ⚠️[.]"

88. However, the Way Day promotion did not conclude on October 29, 2025, despite the unambiguous deadline that Defendants communicated in the October 29 subject lines.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

89. The Way Day sale continued beyond the alleged October 29 end date as confirmed by an October 30, 2025, email with the subject heading: "BATHROOM STORAGE 🤩 Did you hear?! WAY DAY is EXTENDED 🙌[.]"

90. As another example of Defendants' marketing scheme, on November 28, 2025, Defendants sent consumers a mass email with the subject line, "BASSINETS & CRADLES ✨✨✨ BLACK FRIDAY ✨✨✨ ENDS TONIGHT ✨✨✨." Inside, the email confirmed that the Black Friday event entailed savings of up to 80% off and reiterated that it "ENDS TONIGHT."

91. The subject line of the November 28, 2025, email was false or misleading as the Black Friday deals did not end that night, but instead were extended, as Defendants knew and intended when they or their contractors created the marketing campaign.

92. The next day, on November 29, 2025, Defendants sent consumers three mass emails with the subject lines, "VANITY LIGHTING ⚫ 🟣 EXTENDED 🟣 BLACK FRIDAY ⚫ 🟣," "BATHROOM STORAGE 🤩 Did you hear?! WAY DAY is EXTENDED 🙌," and "BED SKIRTS ⚫ 🟣 EXTENDED 🟣 BLACK FRIDAY ⚫ 🟣[.]" These subject lines confirmed that the "Ends Tonight" claim in the November 28, 2025, subject line was false.

93. Defendants completed the year in typical fashion by communicating a false deadline for a Cyber Monday sale offering up to 80% off products on the Wayfair website.

94. On December 1, 2025, Defendants sent consumers a mass email with the subject line, "⭕ ⭕ ⭕ TODAY ONLY: CYBER MONDAY ⭕ ⭕ ⭕[.]"

95. The subject line of the December 1, 2025, email was false or misleading. The duration of the Cyber Monday sale was not limited to December. Instead, the promotion was extended, as Defendants knew and intended when their or their contractors created the marketing campaign.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

96. The next day, on December 2, 2025, Defendants sent two emails to consumers with the subject lines, "PATIO HEATERS 🟪🟪🟪🟪 CYBER MONDAY EXTENDED 🟪🟪🟪🟪[,]" and "BARS & BAR SETS 🟪🟪🟪🟪 CYBER MONDAY EXTENDED 🟪🟪🟪🟪[,]" and "CRATES AND CARRIERS 🟪🟪🟪🟪 CYBER MONDAY EXTENDED 🟪🟪🟪🟪[.]"

97. Thus, December 1, 2025, was not the only day on which consumers could participate in the Cyber Monday event.

98. Further, every email that Defendants send to consumers claiming that their products are on a "limited-time" sale is misleading, as its products are rarely—if ever—offered for their suggested retail prices. A glance at the Wayfair website shows that products are routinely offered for the claimed "sale" prices listed in Defendants' email marketing:




99. Thus, every email Defendants send to promote a limited sale price of "up to" a certain percentage off Wayfair products violates CEMA because Wayfair products are always listed as "up to" a certain percentage off.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801




100. As the subject lines of these examples demonstrate, Defendants are engaged in a scheme where they pressure consumers to purchase Wayfair products by falsely representing the limited availability of their offers.

101. This complicated and seemingly perpetual series of promotions threatened terminations, and renewals of the same offer is a strong indication that these promotions do not reflect any underlying business realities of supply or demand. To the contrary, they are just



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

marketing tricks—components of preplanned, preconceived marketing strategies—all at consumers' expense.

**C. Defendants know when they send emails to Washington residents.**

102. Sophisticated commercial enterprises like Defendants, which are engaged in persistent marketing through mass email campaigns across the United States, have several ways of knowing where the recipients of their marketing emails are located. The means they employ are peculiarly within their knowledge.

103. First, the sheer volume of email marketing that Defendants engage in put them on notice that Washington residents would receive its emails.

104. Second, Defendants may obtain location information tied to email addresses when consumers purchase Defendants' products, or otherwise self-report such information to Defendants.

105. Third, Defendants may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Defendants' emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

106. Specifically, upon information and belief Defendants use Oracle or another comparable service to manage their email marketing campaigns. This platform should allow Defendants to access a list of every email address that was sent a marketing email. It should also allow Defendants to determine who viewed the emails and who clicked on any links within them. Defendants are likely able to infer the general geographic location of recipients by state based on their IP address and email address at the time of email open or link click.

107. Fourth, Defendants may obtain location information tied to email addresses by



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

108. Fifth, Defendants may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

109. Sixth, Defendants may obtain information that the recipients of their marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

110. Seventh, Defendants' website provides under the section entitled "Personal Information We Collect" that it *automatically* collects "[l]og data and device information (such as details about how you've used the Services, IP address, access dates and times, hardware and software information, device information, device event information, unique identifiers, crash data, cookie data, *location data*, and page/product views or clicks)" and "[g]eo-location information (such as IP address, browser information, or mobile GPS information)." (Emphasis added.)

111. Eighth, Defendants' website also provides under the section entitled "Personal Information We Collect" that it collects information provided by consumers including "date of birth, gender, *location*, and preferred language)" and other information such as "a government issued ID number if you do not have an account with [Defendants]" and payment, tax, and other financial information. (Emphasis added.)

112. Finally, Defendants' website also provides under the section entitled "Personal Information We Collect" that it collects "[c]ontact details (such as your name, email address, mailing address, and phone number)" from third party services or other services.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

113. It is thus highly probable that sellers of Defendants' size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. Defendants violated Plaintiffs' rights under CEMA to be free from deceptive commercial emails.**

114. Defendants have spammed Plaintiffs, who are Washington residents, with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

115. Plaintiff Carrigan received, for example, the following emails from Defendants, each of which is misleading for the reasons detailed above, at her personal email address:

116. An email titled, "🚩 CYBER WEEK 🚩 MINUTES LEFT 🚩 " sent on December 3, 2023; and

117. An email titled, "⏰ BLACK FRIDAY ⏰ UP TO 80% OFF ⌛ FINAL HOURS" sent on November 24, 2023.

118. Plaintiff Luark received, for example, the following emails from Defendants, each of which is misleading for the reasons detailed above, at her personal email address:

119. An email titled, "TODAY ONLY: CYBER MONDAY" sent on December 1, 2025.

120. An email titled, "CYBER MONDAY ENDS TONIGHT" sent on December 1, 2025.

121. The subject lines of these emails are false or misleading in violation of CEMA, as discussed in detail, *supra*.

122. The subject lines contained false statements of fact as to the "duration or availability



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

123. Plaintiffs bring the asserted claims on behalf of the following proposed class (the "Class"):

> All Washington residents who, during the Class Period, received a commercial email sent by the Defendants, on behalf of the Defendants, or with the Defendants' assistance, that contained messaging in the email subject line which misrepresented the facts of a sale, deal or promotion.

124. Excluded from this definition of the Class are Defendants' officers, directors, and employees; Defendants' parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

125. The Class Period extends from four years before the filing of the earliest action consolidated into this action through the date on which a class certification order is entered.

126. Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendants sent or caused to be sent during the Class Period to email addresses held by Washington residents.

127. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

128. There are questions of law or fact common to the class, including without limitation whether Defendants sent commercial emails containing false or misleading information in the subject line; whether Defendants sent such emails to email addresses they knew or had to reason to know were held by Washington residents; whether Defendants' conduct violated CEMA; whether Defendants' violation of CEMA constituted a *per se* violation of the Consumer Protection



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Act, RCW 19.86.020 (CPA); and whether Defendants should be enjoined from such conduct.

129. Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendants violated in the same way by the uniform false or misleading marketing messages they sent to all putative members.

130. Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

131. Defendants have acted on grounds generally applicable to the Class, in that, among other ways, they engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which they may be enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

132. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendants have violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

133. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

## VI. CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

134. Plaintiffs incorporate and reallege paragraphs 1-122 above.

135. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [u]ses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line." RCW 19.190.020(1)(b).

136. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

137. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

138. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents, including because Defendants knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

139. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

140. For Defendants' violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**

**Violation of the Consumer Protection Act, RCW 19.86.020**

141. Plaintiffs incorporate and reallege paragraphs 1-122 above.

142. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

143. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

144. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

145. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [u]ses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line." RCW 19.190.020(1)(b).

146. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

147. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

148. Defendants initiated the transmission, conspired with another to initiate the



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents.

149. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

150. For Defendants' violation of the CPA, Plaintiffs and putative members are entitled to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

151. Plaintiffs demand a jury trial.

## VIII. PRAYER FOR RELIEF

Plaintiffs ask that the Court:

A. Certify the proposed Class, appoint Plaintiffs as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendants from the unlawful conduct alleged;

C. Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801

Date: October 2, 2026

Respectfully submitted,

*/s/ Michael C. Tackeff*
J. Gerard Stranch, IV, admitted *pro hac vice*
Michael C. Tackeff, admitted *pro hac vice*
Andrew K. Murray, admitted *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. 46971
Raina C. Borrelli, admitted *pro hac vice*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops, admitted *pro hac vice*
Natalie A. Lyons, admitted *pro hac vice*
Ian R. Bensberg, admitted *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*/s/ Rachel Minder*
Leslie Pescia, admitted *pro hac vice*
Rachel Minder, admitted *pro hac vice*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (212) 532-1091
lpescia@sirillp.com
rminder@sirillp.com

M. Anderson Berry, WSBA No. 63160
Brook E. Garberding, WSBA No. 37140
Gregory Haroutunian, WSBA No. 65669
Brandon P. Jack, admitted *pro hac vice*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955
anderson@emeryreddy.com
brook@emeryreddy.com
gregory@emeryreddy.com
brandon@emeryreddy.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Michael C. Tackeff, hereby certify that on October 2, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

*/s/ Michael C. Tackeff*

Michael C. Tackeff, admitted *pro hac vice*



**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
TEL. (615) 254-8801